(06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3433 | **DATE** | 2/21/2003 |
| **CASE TITLE** | NORMAN W. FISHMAN, individually and vs. WILBUR G. MEINEN, JR., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due ___ ___. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the individual defendants' motion to dismiss [8-1] is granted without prejudice and FUSI's motion to stay the case and compel arbitration [14-1,14-3] is granted. FUSI's motion to dismiss [14-2] is denied as moot. The plaintiff is given ten days to cure any and all deficiencies of the complaint. If no amended complaint is filed on or before ten days after the date of this Memorandum Opinion and Order, the dismissal as to the individual defendants shall thereafter be with prejudice. The Court stays the case with regard to FUSI hereby compels arbitration between Fishman and FUSI.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ☐ | No notices required, advised in open court. | | Document Number |
| ☐ | No notices required. | number of notices | |
| ☐ | Notices mailed by judge's staff. | | |
| ☐ | Notified counsel by telephone. | FEB 2 4 2003 | QS |
| ✓ | Docketing to mail notices. | date docketed | |
| ☐ | Mail AO 450 form. | docketing deputy initials | |
| ☐ | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NORMAN W. FISHMAN, individually )
and as Trustee for ARI FISHMAN, )
UGMA, )
 )
    Plaintiff, )
 )
    v. )    Judge Ronald A. Guzmán
 )
WILBUR G. MEINEN, JR.; )    02 C 3433
NORMAN D. RICH; AVROM H. )
GOLDFEDER; GLEN WHERFEL; )
SHERWIN KOOPMANS; JOSEPH A. )
CARI, JR.; GEORGE OHLHAUSEN; )  **DOCKETED**
KURT C. FELDE; WACHOVIA )
SECURITIES, INC. f/k/a First Union )    FEB 2 4 2003
Securities Inc., )
 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Norman Fishman sued defendants for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Before the Court is defendants Wilbur Meinen, Jr., Norman Rich, Avrom Goldfeder, Glen Wherfel, Sherwin Koopmans, Joseph Cari, Jr.,[1] George Ohlhausen, and Kurt Felde's (collectively the "individual defendants") motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Rule") 9(b) and 12(b)(6). Also before the Court is Wachovia Securities, Inc., f/k/a First Union Securities, Inc.'s ("FUSI") motion to dismiss Fishman's complaint, or, in the alternative, to compel arbitration. For the

---

[1] By agreement of the parties, Joseph Cari, Jr. has been dismissed as a defendant.

following reasons, the Court grants the individual defendants' motion to dismiss without prejudice and grants FUSI's motion to compel arbitration.

## FACTS

Fishman was a shareholder of Success Bancshares, Inc. ("SBI") in his own name and as a trustee for his son, Ari Fishman. (Compl. ¶ 2.) Fishman was also a member of the Board of Directors of Success National Bank (the "Bank"), which was operated by SBI, from 1982 until December 31, 1999. (*Id.*) The Bank is a community bank, founded in 1973, which has its headquarters in Lincolnshire, Illinois. (*Id.* ¶ 4.) SBI was created in 1984 as a Delaware corporation and bank holding company. It acquired the Bank and operated it through seven branch offices throughout the Chicago metropolitan area until 2001. (*Id.* ¶¶ 4-5.) In 1997, SBI went public and its stock traded thereafter on NASDAQ under the symbol SXNB. (*Id.*) On May 21, 2001, SBI was sold to BankFinancial, a wholly owned subsidiary of Financial Federal MHC, Inc., a federally chartered holding company. (*Id.*)

Wilbur Meinen, Jr. is the former President and CEO of SBI and the Bank, and in early 1999 became the Chairman of the SBI Board of Directors. (*Id.* ¶ 3.) Norman Rich was a direct or SBI and the Bank since 1991. (*Id.*) Avrom H. Goldfeder was a director of SBI since 1997. (*Id.*) Glen Wherfel was a director of SBI since 1998 and a director of the Bank since 1992. (*Id.*) Sherwin Koopmans was a director of SBI since 1997, and served as the chairman of the Executive Committees of SBI's and the Bank's Board of Directors from August 1998 to December 1998. (*Id.*) Joseph Cari, Jr. was appointed as director of SBI in January 2000. (*Id.* ¶ 4.) George Ohlhausen was a director of SBI from at least as early as 1982 through May 24, 2000. (*Id.*) Kurt Felde was Executive Vice

2

President and Chief Financial Officer for SBI and the Bank from June 1, 1998 until its sale. FUSI is a North Carolina corporation and an investment banker which oversaw the sale of SBI's stock. (*Id.*)

SBI and the Bank had separate boards of directors. (*Id.* ¶ 5.) When Saul Binder, the president of the Bank since 1982, died in July of 1998, the two boards convened to discuss the future of the Bank. (*Id.*) FUSI, acting as investment banker and a market maker in SBI stock, informed the Board that if it elected to sell SBI, its stock could be sold for $24 to $25 per share, which was double the stock price at that time (approximately $12.50). (*Id.*) The plaintiff was the only director of the Bank or SBI in favor of selling the Bank, and the rest of both boards' members agreed not to sell the Bank. (*Id.*) After this meeting, the two boards had no further interaction regarding the future of SBI. (*Id.*)

In September and October of 1998, the SBI board met with the investment banking firm of Keefe, Bruyette & Woods, Inc. ("KBW") to create a long-term strategic plan for SBI, and it formally retained KBW as its planning consultant in February of 1999. (*Id.* ¶¶ 5-6.) On January 11, 2000, defendant Meinen, the President and CEO of SBI as of December 1998, terminated Fishman as a member of the Bank's board of directors through a written letter. (*Id.*) Fishman claims that this was due to the fact that he had challenged an existing loan to an SBI shareholder, the large legal bills submitted by SBI's outside counsel, and the board's alleged refusal to investigate a possible sale or merger of the Bank. (*Id.*)

In early 1999, the SBI board commenced a stock repurchase program through a series of private transactions. (*Id.* ¶ 6.) The board formally authorized this program in

3

January 12, 2000 and allocated $2 million for the repurchasing of its stock. (*Id.* ¶ 7.) The plan was formally ratified by the SBI Board at its annual meeting on May 24, 2000. (*Id.* ¶ 9.) The repurchasing efforts were intensified during the first two quarters of 2000. (*Id.*) FUSI privately solicited purchases from Fishman and other large SBI shareholders. (*Id.*) By November 2000, SBI had repurchased approximately 660,000 shares at an average price of $10.4042 per share. (*Id.*) By the end of the second quarter of 2000, SBI had repurchased over 400,000 shares at $10 per share through private transactions. (*Id.* ¶ 8.)

On May 18, 2000, Robert Krebs, and employee of FUSI, called Fishman and informed him about the repurchase plan. (*Id.*) Krebs allegedly told Fishman that there was no market for his shares, and advised Fishman to sell his shares for approximately $10 per share while the repurchase plan was still in effect. (*Id.*) As a result of this conversation, Fishman sold all but 300 of his own shares and all of the shares he was holding as trustee for his son during the week of May 18 through May 23, 2000.

Fishman contends that as early as January 11, 2000, Morgan Gasior, the CEO of BankFinancial, approached the management of SBI about a possible merger between the two companies, at share prices in the $16-$18 range. (*Id.* ¶ 7.) On March 8, 2000, Fishman wrote a letter to SBI's corporate secretary, Marlene Sachs, requesting that a resolution seeking to solicit offers to purchase SBI be brought before the shareholders at the 2000 Annual Meeting scheduled for May 24, 2000. (*Id.* ¶ 8.) On May 17, 2000, Lauri Breitenstein, General Counsel of SBI, rejected this request through a letter, stating that the resolution was inappropriate. (*Id.*) On April 25, 2000, SBI issued a press release reporting its first quarter earnings, in which it described a plan to expand the branches of

4

the Bank. (*Id.*) Fishman again submitted a resolution to sell the Bank to the SBI Board for consideration at its annual meeting on May 24, 2000, which the Board refused to consider. (*Id.* ¶ 9.)

Between June and August 2000, several engagement letters were transmitted between BankFinancial, SBI, and KBW relating to a potential merger of SBI with BankFinancial. (*Id.* ¶ 9.) On May 26, 2000, Patricia McJoynt and Doug Reidel of KBW issued a report describing the potential effects of the proposed merger between SBI and BankFinancial. (*Id.* ¶¶ 9-10.) On June 1, 2000, SBI issued a public notice announcing that it was repurchasing stock. (*Id.* ¶ 10.) On June 28, 2000, SBI entered into a contract with KBW for KBW to advise SBI regarding the proposed BankFinancial merger. (*Id.*) On that same day, Steven P. Kent of KBW issued a report for SBI entitled "Success Bancshares, Inc. Strategic Alternatives Presentation Concept of Conversion Strategic Merger with BankFinancial" updating past data relating to the proposed merger. (*Id.*) On July 26, 2000, SBI entered into Stock Option Agreements with defendants, which gave each defendant the option to purchase 3,000 shares at $11 per share on or before July 26, 2010. (*Id.*) Also, through a modified employment agreement, Meinen was issued 8,000 shares and granted options to purchase an additional 33,000 SBI shares. (*Id.*)

On September 8, 2000, BankFinancial made an offer to KBW to acquire SBI in a merger transaction at $18 to $20 per share, depending on the results of BankFinancial's due diligence. (*Id.* ¶ 11.) KBW made a presentation to the SBI Board on September 27, 2000 regarding responses to questions raised by institutions relating to the proposed merger. (*Id.*) On May 21, 2001, SBI was sold to BankFinancial, and SBI shareholders received $19 per share. (*Id.*)

5

Following the sale, Fishman requested from SBI the corporate minutes or other documents that referred or related to the sale of SBI and to the SBI/BankFinancial merger. (*Id.*) When SBI refused this request, Fishman filed a lawsuit in the Circuit Court of Cook County seeking a court order for the production of the documents (*Fishman v. Success Bancshares, Inc.*, 01 CH 18583). (*Id.*) On January 4, 2002, SBI produced the requested document to Fishman. (*Id.*) Fishman filed the instant claim on May 13, 2002, on his own behalf and on behalf of his son, Ari Fishman, acting as his son's trustee, contending that the defendants violated the federal securities laws by making false representations and by failing to disclose that SBI was being sold and that his stock would be worth almost double the amount SBI offered him during its repurchase program. (*Id.* ¶ 2.)

## **DISCUSSION**

A motion to dismiss does not test the merits of the case, but rather attacks the sufficiency of the complaint. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court may only dismiss a complaint for failure to state a claim upon which relief may be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of his claims entitling them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). The court must accept all pleaded allegations of the complaint as true and must view those allegations in the light most favorable to the plaintiffs. *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993); *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). However, the Court need not accept as true the legal conclusions alleged

in the complaint. *Vaden v. Vill. of Maywood*, 809 F.2d 361, 363 (7th Cir. 1987). A plaintiff may plead conclusions, but those conclusions "must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995).

Fishman first seeks relief against both the individual defendants and against FUSI under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission. The Act makes it unlawful for any person, in connection with the sale or purchase of a security, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5 (1979). To state such a claim, one must allege that the defendant: (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase and sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused the plaintiff's injuries. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995); *In re Allied Prods. Corp., Inc. Sec. Litig.*, No. 99 C 3597, 2000 WL 1721042, at *2 (N.D. Ill. Nov. 15, 2000). Further, the plaintiff must establish that the defendants had a duty to disclose the omitted information. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988).

### I. Claims Against Individual Defendants

It is well settled that "Rule 9(b) [of the Federal Rules of Civil Procedure] governs claims based on fraud and made pursuant to the federal securities laws." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (quotations omitted). Under Rule 9(b), "circumstances

7

constituting fraud . . . shall be stated with particularity." FED. R. CIV. P. 9(b). In the Seventh Circuit, this rule has been interpreted as requiring the complaint alleging fraud to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). Put more simply, the complaint must specify the "who, what, when, where, and how" of the allegedly fraudulent acts. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). "The purpose . . . of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). The rule serves three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

In addition to the general fraud pleading requirements, when pleading securities fraud, under the PSLRA, the pleading with particularity requirements of 9(b) are "stiffened." *Law v. Medco Research, Inc.*, 113 F.3d 781, 785 (7th Cir. 1997). The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (West 2000). It further requires a plaintiff to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). If these requirements are not met, the Court shall dismiss the complaint. 15 U.S.C. § 78u-4(b)(3).

While the Seventh Circuit has yet to address specifically just how rigorous the PSLRA's pleading standard is for the "requisite state of mind" requirement, cases in the Northern District of Illinois generally have followed the Second Circuit's pleading standard, which requires plaintiffs to allege facts either (1) showing that the defendant had both motive and opportunity to commit fraud; or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 100 (2d Cir. 2001); *see, e.g., In re Hartmarx Sec. Litig.*, No. 01 C 7832, 2002 WL 653892, at *2 (N.D. Ill. Apr. 19, 2002) (collecting cases); *Beedie v. Battelle Mem'l Inst.*, No. 01 C 6740, 2002 WL 22012, at *2 (N.D. Ill. Jan. 7, 2002) (collecting cases).

Taken together, the pleading requirements of Rule 9(b) and the PSLRA make it clear that a plaintiff must aver which defendants said what, to whom, and when. *Ackerman*, 172 F.3d at 471; *see also Sears*, 912 F.2d at 893. Where a plaintiff alleges that a group of individuals is part of a fraudulent scheme, he or she must put each defendant on notice of his or her alleged role. *See Vicom*, 20 F.3d at 777-78.

The plaintiff's complaint against the individual defendants falls short in that it fails to specify the "who, what, where, when and how" of the alleged misrepresentations or omissions on the part of each individual defendant regarding the prospects of the sale of SBI. Courts, both in this circuit and others, have held that a plaintiff may not vaguely attribute a fraudulent statement to a group of defendants. *Sears*, 912 F.2d at 893; *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Further, as a general rule, a complaint that "lumps all the defendants

9

together and does not specify who was involved in what activity" is generally insufficient to satisfy Rule 9(b). *Sears*, 912 F.2d at 893.

While the plaintiff is correct that a minor exception to the group pleading rule exists where the information necessary is uniquely within the defendants' knowledge, *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); *Banowitz v. State Exch. Bank*, 600 F. Supp. 1466, 1469 (N.D. Ill. 1985), such is not the case here. First, Fishman alleges that misrepresentations were specifically made to him by the individual defendants. Second, unlike plaintiffs in many securities cases, Fishman held a position which would allow him to be privy to the plans and operations of SBI. He was Chairman of the Bank and a member of its board from 1982 until late 1999. Last, Fishman has already had the opportunity of discovery of the most relevant SBI documents to the proposed sale. He obtained a court order for the production of all of the documents that referred to or related to the sale of SBI and to the SBI/BankFinancial merger, and SBI produced all of the documents requested by Fishman to him on January 4, 2002. (Compl. ¶ 44.)

The plaintiff cites this Court's decision in *Talton v. Unisource Network Servs., Inc.*, No. 00 C 7967, 2001 WL 1035732 (N.D. Ill. Sept. 10, 2001), in support of his group pleading argument. However, the *Talton* case is unsupportive of his argument. In *Talton*, the plaintiff was alleging that the defendants made misleading statements directly to her. *Id.* at *6. Thus, this Court held that the policy underlying group pleading would not be served because the information to be pleaded was not in the exclusive control of the defendants. *Id.*

As in *Talton*, Fishman alleges that fraudulent misrepresentations were made to him by the defendants. Further, Fishman possesses a certain degree of knowledge of the alleged fraud in this case. Unlike most shareholders who bring securities fraud cases, Fishman, like Ms. Talton, held a position that would allow him to be privy to information regarding defendant's business. Ms. Talton was the President and CEO of the defendant Unisource for almost fourteen years, and Mr. Fishman was chairman of the Bank, which was wholly run by SBI, and a member of the Bank's board of directors for almost twenty years. Through his position at the Bank, he personally knew and interacted with the individual SBI defendants. Further, in this case, Fishman is uniquely aware of the contents of documents relating to the merger of SBI and BankFinancial.

Because (1) Fishman has failed to specify the "who, what, where, when and how" of the alleged misrepresentations and (2) the group pleading exception is inapplicable in this case because the information necessary was not within the exclusive control of defendants, the Court grants the individual defendants' motion to dismiss.

The only alleged misrepresentation about which Fishman is more specific is one involving a statement during a phone conversation with a FUSI representative regarding his SBI stock. In order for the individual defendants to be held liable for the alleged misrepresentations made by the FUSI representative, however, there must be an agency relationship between FUSI and the individual defendants. According to the Seventh Circuit, "when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim." *Lachmund v. ADM Investor Servs., Inc.*, 191

F.3d 777, 783 (7th Cir. 1999); *see also MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 895 (N.D. Ill. 2000).

Fishman does not specify with particularity in his complaint the circumstances giving rise to any agency relationship between the FUSI representative and the individual defendants. While the plaintiff contends that the alleged agency relationship in this case, which the plaintiff contends is prescribed by law, does not need to be pleaded with particularity because such a pleading would serve "no purpose," the Seventh Circuit has not yet acknowledged such an exception to its holding in *Lachmund*. (Pl's Resp. at ¶ 9.) Further, Fishman had set up a brokerage account with FUSI, and his 66,000 shares of SBI stock were held in a FUSI account. Thus, the FUSI representative could have potentially been acting solely as Fishman's broker during this call, independent of FUSI's separate relationship with SBI. A particularized pleading as to agency would serve the purpose of clarifying this issue. The plaintiff further contends *Lachmund* does not apply because he does not rely upon the same circumstances to establish the fraud and the agency in this case. Because the Court finds that, in this case, the alleged agency relationship and the fraud claims are dependent on one another, the *Lachmund* standard is applicable. Accordingly, Fishman must plead the agency relationship between each individual SBI defendant and the FUSI representative according to the heightened particularity requirement of Rule 9(b). Fishman has failed to fulfill this requirement.

For all of these reasons, the Court grants defendants' motion to dismiss. The complaint against the individual defendants is dismissed without prejudice.[2]

---

[2]Defendants argue, among other things, that Fishman failed to plead adequately the duty to disclose. However, because this Court has held that the plaintiff did not fulfill the pleading requirements of Rule 9(b) and the PSLRA and because a duty to disclose, as well as the other issues raised, are necessarily dependent on the nature and specifics of

## II. Claims Against FUSI

Defendant FUSI has moved to compel arbitration and to stay the claims against it pending arbitration. The Federal Arbitration Act ("FAA") "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA requires courts to interpret arbitration agreements according to their terms, just like any other private agreements. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). Thus, to determine whether the parties intended to submit an issue to arbitration, courts review the contract at issue through standard methods. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986); *see also Mastrobuono*, 514 U.S. at 54. In making this review, courts must bear in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 148 (7th Cir. 1995). Where the parties have a contract that calls for arbitration of the dispute, the court must enter an order compelling arbitration. *See* 9 U.S.C. §§ 3, 4; *Dean Witter*, 470 U.S. at 218.

---

the particular misstatement(s) made, it need not reach the other issues raised by defendants.

Under the arbitration agreement entered into by Fishman and FUSI, Fishman consented to arbitration of "any" and

> "all claims or controversies, whether such arose prior to, on or subsequent to [March 6, 2000], between me and FUSI and/or any of its present or former officers, directors or employees concerning or arising from (i) any account maintained by me with FUSI individually or jointly with others in any capacity; (ii) any transaction involving FUSI or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us or any duty arising from the business of FUSI or otherwise, shall be submitted to arbitration . . . ."

(FUSI's Mot. Dismiss, Attach. A, at 2.) While the plaintiff is correct that the arbitration agreement was entered into as a part of his Client Agreement regarding his brokerage account with FUSI, the plain terms of this arbitration clause are broad, and include claims based upon transactions occurring both within and outside of his brokerage account. Further, the arbitration agreement covers "any duty arising from the business of FUSI." (*Id.*)

The Seventh Circuit recently characterized an arbitration clause recommended by the American Arbitration Association, which requires that "all controversies and claims" either "arising out of" or "relating to" the contract be settled by arbitration, as "very broad." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002). Further, the Court held that is has "naturally been willing" to read these "admittedly expansive clauses quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts." *Welborn*, 301 F.3d at 639.

The arbitration clause between Fishman and FUSI is even broader than the one described by the Seventh Circuit in *Welborn*. The Fishman/FUSI clause

14

covers "any and all claims or controversies" "arising from" not only the specific contract in which it exists, but also "any other agreement" between the two parties and "any duty arising from the business of FUSI or otherwise." Thus, this clause falls squarely within the Seventh Circuit's definition of a "very broad" arbitration clause. Therefore, Fishman's fraud claims, which are at least tangentially related to his agreement with FUSI, must be decided by arbitration.

Because this claim must be submitted to arbitration, all other issues raised by Fishman and FUSI must be arbitrated. Thus, this Court need not and more importantly, must not, address those issues.

## CONCLUSION

For the foregoing reasons, the individual defendants' motion to dismiss [doc. no. 8-1] is granted without prejudice and FUSI's motion to stay the case and compel arbitration [doc. nos. 14-1, 14-3] is granted. FUSI's motion to dismiss [doc. no. 14-2] is denied as moot. The plaintiff is given ten days to cure any and all deficiencies of the complaint. If no amended complaint is filed on or before ten days after the date of this Memorandum Opinion and Order, the dismissal as to the individual defendants shall thereafter be with prejudice. The Court stays the case with regard to FUSI and hereby compels arbitration between Fishman and FUSI.

SO ORDERED.          ENTER: 2/21/03

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
United States Judge

15